IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2018

**STATE OF TENNESSEE v. JOHN SEARS**

**Appeal from the Criminal Court for Shelby County**
No. 12-05907          Lee V. Coffee, Judge

_____

**No. W2017-00938-CCA-R3-CD**

_____

Defendant, John Sears, was convicted at trial of theft of property over the value of $60,000 for his theft of ownership interest in three real properties owned by family members. On appeal, Defendant argues that: (1) the evidence was insufficient for a rational juror to have found him guilty of theft of property over the value of $60,000 beyond a reasonable doubt; (2) the trial court erred in admitting lay witness testimony regarding the value of the stolen real property; and (3) cumulative error warrants the grant of a new trial. After a thorough review of the facts and applicable case law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, JJ., joined. JAMES CURWOOD WITT, JR., concurred in results only.

Ernest J. Beasley, Memphis, Tennessee, for the appellant, John Sears.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Ann Thompson, Senior Counsel; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

The Shelby County Grand Jury indicted Defendant on the following charges: count one, theft of property over the value of $60,000; count two, three, and four, identity

theft; and counts five through ten, forgery under the value of $1,000. Defendant pled guilty to counts two through ten and proceeded to trial on count one.

## *Jury trial*

### *State's proof*

William Phillips testified that he was married to Margaret Phillips and was Defendant's brother-in-law. Martha Sears, now deceased, was the mother of Defendant, Dionne Vines, and Mrs. Phillips. Dionne Vines and her son, David Vines, were deceased at the time of trial.[1] Mr. Phillips stated that, in 2012, he and Mrs. Phillips lived in Indiana. Dionne also lived in Indiana, and Martha and Defendant lived in Memphis. In January 2012, Mr. and Mrs. Phillips visited Martha in Memphis to check on Martha's health. Martha was in the hospital, but she resided at 2481 West Ball Road. Mrs. Phillips, Dionne, David, and Defendant shared ownership of the 2503 West Ball Road property and the 880 East Mallory Road property. During their visit to Memphis, Mr. and Mrs. Phillips checked on these three properties. When they visited the 2481 West Ball Road property, they "noticed that there w[ere] a lot of things that should have been in the house that were missing." Mr. Phillips explained that "[a]ll the things that should have been in David['s] . . . room were gone, his clothes, tools, books, papers." Mr. Phillips stated that other items throughout the residence were missing.

Mr. Phillips spoke with some neighbors and went to the Shelby County Register of Deeds Office. Mr. Phillips explained that Defendant, Dionne, and Mrs. Phillips should have been listed as owners of the 2481 West Ball Road property, but Dionne's name was not listed as an owner. Mr. Phillips identified a quitclaim deed to the 2481 West Ball Road property, transferring the property from Martha to Dionne, Mrs. Phillips, and Defendant in 1977. Mr. Phillips identified another deed that purported to transfer Dionne's interest in the 2481 West Ball Road property to Defendant.

Mr. and Mrs. Phillips looked at the deed to the 2503 West Ball Road property, which should have listed Defendant, Dionne, and David as owners but instead listed Defendant as the sole owner of the property. Mr. Phillips identified a deed that gave Martha and Defendant equal interests in this property in 2006, along with another deed that transferred Martha's interest to David and Dionne in 2011. However, a deed filed on February 21, 2012, transferred David and Dionne's interest to Defendant, making him the sole owner. Mr. Phillips stated that the residence on the 2503 West Ball Road property

---

[1] For purposes of clarity, we will refer to some individuals by their first names because they share surnames. We intend no disrespect.

appeared to be in good condition on the outside, but he was unaware of the interior condition because Defendant lived at this property.

The deed for the 880 East Mallory Road property should have listed Defendant, David, and Dionne as owners, but again, it listed Defendant as the sole owner of the property. In 2011, Martha transferred her fifty percent interest in the 880 East Mallory Road property to David and Dionne. However, a later deed purported to transfer David and Dionne's ownership interest to Defendant.

Mr. Phillips explained that, between 2011 and May 2012, "a lot of work had been done on [the 2481 West Ball Road property], both inside and outside." Volunteers replaced the wooden facade on the residence, renovated the bathroom, replaced the kitchen floor and part of the living room floor, and painted the walls and cabinets. Mr. and Mrs. Phillips replaced the roof on the residence. Additionally, in May 2012, Defendant transferred his interest in the 2481 West Ball Road property to Mrs. Phillips. Mrs. Phillips asked Defendant why Dionne was no longer a partial owner of the 2481 West Ball Road property, and Defendant said, "Just forget about it, it's all mine." On a different occasion, Mrs. Phillips spoke with Defendant again about the 2481 West Ball Road property, and Defendant refused to transfer the property interest back to Dionne. Defendant told Mrs. Phillips "to leave Memphis and keep her nose out of Memphis business or she would get hurt." When Mrs. Phillips asked if he was threatening her, Defendant said, "Take it any way you want it."

In June 2012, Mr. Phillips examined the deeds and realized that "some things were out of alignment with the stated form . . . from the Deeds Office." Mr. Phillips explained that the signatures, dates, and stamps looked like they had been transposed. Around June 21, 2012, Mr. and Mrs. Phillips filed a complaint with the Memphis Police Department alleging that Defendant forged quitclaim deeds to transfer property interests to himself. Mr. Phillips stated that Defendant admitted to a police officer that he forged the quitclaim deeds.

Regarding the value of the properties at issue in this case, Mr. Phillips stated that the Shelby County Assessor of Property ("SCAP") valued the 2481 West Ball Road property at $32,000. Mr. Phillips believed that this assessment was low because the residence was in good repair and sat on a large lot in Memphis. Mr. Phillips also asserted that the assessment of the 2503 West Ball Road property at $65,400 was also low "[b]ecause it's quite a large brick house," "[i]t's on a very large piece of property, and it's in town." The 880 East Mallory Road property was valued at $57,900, but Mr. Phillips also felt that the price was too low because the property was located next to a golf course and the residence was in good repair. On cross-examination, Mr. Phillips testified that he

had never paid any of the property taxes, utility bills, or to repair the 2503 West Ball Road property or the 880 East Mallory Road property.

Mrs. Phillips testified that she is Defendant's sister. She lived in Indiana with Mr. Phillips, but she visited her mother, Martha, in Memphis in May 2012. While she was in Memphis, Mrs. Phillips checked on her mother's residence at the 2481 West Ball Road property and observed that some of her mother's personal property was missing, and that "the house was kind of in . . . shambles[.]" She testified similarly to Mr. Phillips that she spoke with neighbors, visited the Shelby County Register of Deeds office, and noticed that the deeds to the three properties at issue had been altered. Mrs. Phillips asserted that Defendant had forged quitclaim deeds to the three properties to increase his ownership interest. Regarding Defendant's statement that Mrs. Phillips should leave Memphis before she got hurt, Mrs. Phillips testified that she took the statement as a threat and was scared of Defendant.

Mrs. Phillips stated that, in May 2012, volunteers replaced the floors, installed brick on the rear of the house, and completed other repairs on the 2481 West Ball Road property. Mrs. Phillips noted that she and Mr. Phillips "also put a new roof on the house at [their] expense." Mrs. Phillips testified that the residence had three bedrooms and one bath and sat on a "very big" lot. She explained that Defendant eventually "removed his name from the deed of the [2481 West Ball Road] property." Mrs. Phillips testified that the residence on the 2503 West Ball Road property was "a sizeable house on a huge lot[.]" She stated that, in May 2012, the interior of the residence "looked great" and that Defendant had added a bathroom and was renovating the residence. Mrs. Phillips noted that the residence on the 880 East Mallory Road property had three bedrooms and one bath, and in May 2012, the residence was in a "very nice" condition. Mrs. Phillips testified that Defendant still controlled the 880 East Mallory Road property and the 2503 West Ball Road property. Mrs. Phillips believed that the SCAP's appraisals of the three properties were "quite low for the propert[ies]" because the houses were large, in good condition, and were located in nice neighborhoods.

Defendant and the State stipulated that Sergeant Jensen of the Memphis Police Department interviewed Defendant, who made the following admissions:

1) That he forged a deed to 2481 West Ball Road, dated July 8[], 2011, and filed February 21[], 2012, whereby he forged the signature of Dionne Vines and Janice Smith, a notary, and deeded the property rights of Dionne Vines to himself. This deed was entered into evidence as Exhibit 5 in this trial for theft of property over $60,000.

- 4 -

2) That he forged the deed to 2503 West Ball Road, dated July 8, 2011, and filed February 21[], 2012, whereby he forged the signature of Dionne Vines, David Vines, and Janice Smith, a notary, and deeded the property rights of Dionne Vines and David Vines to himself. This deed was entered into evidence as Exhibit 6 in this trial for theft of property over $60,000.

3) That he forged a deed to 880 East Mallory Road, dated July 8, 2011, and filed February 21[], 2012, whereby he forged the signature of Dionne Vines, David Vines, and Janice Smith, a notary, and deeded the property rights of Dionne Vines and David Vines to himself. This deed was entered into evidence as Exhibit 7 in this trial for theft of property over $60,000.

Stephen Branim testified that he worked for SCAP as a residential appraiser. After the trial court admitted Mr. Branim as an expert in residential real estate appraisals, Mr. Branim explained that appraisers use three different methods to determine the value of a property: "the income approach, which is primarily for commercial income-producing properties; the cost approach, which is a replacement cost of the improvement added to the land value; and the market approach, or sales . . . comparison approach that analyzes comparable sales against the subject to derive a value." As a SCAP appraiser, Mr. Branim focused solely on the fair market value of properties. He explained that private appraisers used different methods for calculating value depending on the purpose of the appraisal. For example, he stated that some appraisers considered foreclosure sales, or non-arm's length transactions, instead of only arm's length transactions. For purposes of determining the fair market value of a property, Mr. Branim did not consider non-arm's length transactions because those transactions "typically do[] not reflect the fair market[.]" Mr. Branim explained that, if the appraised value of a property differed between the valuation methods, he determined whether one valuation method had a higher rate of error.

Mr. Branim testified that he appraised the three properties at issue in this case. In 2012, the 2481 Ball Road property "was valued using the cost approach for 2009 reappraisal at a total of [$]32,500." Mr. Branim stated that the 2481 Ball Road property was reappraised in 2013, and the value increased to $38,800 based on "some renovation or some alteration that had occurred to the property" in 2012. Mr. Branim believed that the SCAP used the cost approach in 2009 to appraise the property because "the market approach was deemed less reliable." Mr. Branim stated that, based on the market approach using comparable sale values, the 2481 Ball Road property was valued at $50,640.

The SCAP appraised the 2503 Ball Road property in 2012 at $65,400 based on the cost approach. Mr. Branim explained that the SCAP used the cost approach rather than the market approach because most of the comparable properties had significantly smaller square footage. The market value of the 2503 Ball Road property was $86,940. In 2012, the 880 East Mallory Road property was appraised at $57,900 based on the cost approach and $65,120 based on the market approach. Mr. Branim testified that the SCAP appraisals were never contested by the property owners. He explained that it was normal for private appraisers to give a different appraisal value on the same property.

On cross-examination, Mr. Branim testified that, if there were few arms-length transactions in a neighborhood on which to base an appraisal, the SCAP typically used the cost approach. He declined to state whether Defendant's expert, William Sexton, was incorrect in his appraisal of the properties at issue because a private appraiser considered factors that Mr. Branim did not as an appraiser for SCAP.

*Defendant's proof*

After the trial court declared William Sexton to be an expert in real estate appraisals, Mr. Sexton testified that the cost approach to appraising residential property was typically used for new construction properties. Thus, Mr. Sexton looked at the market approach when appraising the properties at issue. He appraised the 2503 West Ball Road property at $17,000, the 2481 West Ball Road property at $13,500, and the 880 East Mallory Road property at $15,000. He noted that "a vast majority of the sales that had taken place in that period of time were distress sales." Mr. Sexton considered properties that had been sold within the previous six months as comparable properties for his assessment, including distress sales.[2] He explained that his appraisal values differed from Mr. Branim because Mr. Branim considered comparable properties that had been sold several years prior and did not account for the housing market crash of 2008. On cross-examination, Mr. Sexton explained that he did not consider some comparable sales where the value of the residence had increased due to renovations because "the subject property in its present condition did not reflect renovated value."

The jury found Defendant guilty as charged of theft of property over the value of $60,000. The trial court sentenced Defendant to ten years as a Range 1 standard offender and suspended the sentence to probation after service of six months. Defendant filed a

---

[2] Mr. Sexton explained that he used sales from 2015 and 2016 to estimate the value of the properties in 2012 because the market had not changed significantly from 2012 to 2016.

timely motion for new trial,[3] which the trial court denied. Defendant now timely appeals the trial court's judgment.

## II. Analysis

### *Sufficiency of the evidence*

Defendant asserts that "no reasonable jury could find the [S]tate's expert on fair market value to be believable." Defendant argues that, under the definition of "fair market value," the properties were valued less than $60,000.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2011). Theft of property is "[a] Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more[.]" Tenn. Code Ann. § 39-14-105(a)(5) (2011). Our supreme court recently held that the consolidated theft statute, section 39-14-103, includes theft of real property. *State v. Gentry*, 538 S.W.3d 413, 426 (Tenn. 2017). The Tennessee Code

---

[3] Defendant prematurely filed his motion for new trial before the judgment was entered. "A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Tenn. R. App. P. 4(d). Thus, we shall treat Defendant's motion for new trial as if it was filed on November 13, 2016, the date the judgment was entered.

Annotated defines "value" as "[t]he fair market value of the property or service at the time and place of the offense" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A) (2011). "If the defendant . . . had a legal interest in the property or service that is the object of the offense, the amount of consideration or value of the interest shall be deducted from the value of the property or service ascertained under subdivision (a)(36)(A), (B) or (C) to determine value." Tenn. Code Ann. § 39-11-106(a)(36)(D) (2011). The jury is tasked with determining the fair market value of the stolen property at the time and place of the theft. *See State v. Hamm*, 611 S.W.2d 825, 828-29 (Tenn. 1981).

When the evidence is viewed in the light most favorable to the State, we conclude that a rational juror could have found Defendant guilty of theft of property of the value of $60,000 or more beyond a reasonable doubt. Mr. and Mrs. Phillips testified that, in 2012, they discovered that fraudulent deeds had been filed that conveyed Dionne's interest in the 2481 Ball Road property, David and Dionne's interests in the 2503 Ball Road property, and David and Dionne's interests in the 880 East Mallory Road property to Defendant. Defendant stipulated at trial that he admitted to police to forging the deeds that conveyed property interest in the three properties to him. Regarding the value of the properties, Mr. Branim testified that the SCAP appraised the properties to be valued at the following using the *cost approach*: the 2481 Ball Road property, $32,500; the 2503 Ball Road property, $65,400; and the 880 East Mallory Road property, $57,900. Using the *market value approach*, Mr. Branim testified that the appraised values of the properties were the following: the 2481 Ball Road property, $50,640; the 2503 Ball Road property, $86,940; and the 880 East Mallory Road property, $65,120. Considering the share of the property interest that Defendant stole of each property, Defendant stole $93,033.33 based on Mr. Branim's use of the cost approach or $118,253.33 based on Mr. Branim's use of the market approach. Additionally, Mr. and Mrs. Phillips testified that they believed the SCAP appraised values of the properties were low.

While Mr. Sexton testified that, based on the market approach, the 2481 Ball Road property was valued at $13,500, the 2503 Ball Road property was valued at $17,000, and the 880 East Mallory Road property was valued at $15,000, it was within the purview of the jury to credit Mr. Branim's testimony regarding his appraisals and Mr. and Mrs. Phillips testimony regarding renovations and the condition of the properties. We decline to reweigh the testimony of the expert witnesses. Defendant is not entitled to relief on this ground.

*Admission of testimony of value of stolen property*

Without citing to any specific Tennessee Rule of Evidence,[4] Defendant asserts that the trial court erred in admitting Mr. and Mrs. Phillips' testimony regarding the value of the stolen property. Defendant argues that "due to the complex nature of this type of case[,] the fact that these parties had no experience in real estate[,] and the fact that the witnesses had an interest in [Defendant]'s conviction," the testimony should have been excluded. The State contends that Mr. and Mrs. Phillips properly testified about the value of the property as the owners and lay witnesses.

In order for evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." Tenn. R. Evid. 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Tenn. R. Evid. 403. Tennessee Rule of Evidence 701 states that a lay witness' testimony is "limited to those opinions or inferences which are . . . rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a). Additionally, "[a] witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). "If an opinion is based upon a lay witness's own observations, his or her conclusions require no expertise and are within the range of common experience, the opinion is admissible." *State v. Samuel*, 243 S.W.3d 592, 603 (Tenn. Crim. App. 2007); *see also State v. Schiefelbein*, 230 S.W.3d 88, 130 (Tenn. Crim. App. 2007). We review a trial court's ruling regarding the admissibility of evidence for an abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008).

The following exchange occurred during Mr. Phillips' testimony:

[DEFENSE COUNSEL]: The next exhibits come from the Assessor's Office. I agreed to mark them. My understanding was that we would have them talked about by a witness from the Assessor's Office.

[THE STATE]: It will be done in depth by [Mr. Phillips], not by [Mr. Branim].

---

[4] In fact, Defendant cites generally to the Federal Rules of Evidence. We note that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Ct. Crim. App. 10(b). For purposes of judicial efficiency, we will address the merits of Defendant's issue.

[DEFENSE COUNSEL]: Don't want to be an obstructionist nor go back on something you thought I agreed to. My preference would be to wait till the assessor comes in to get to these documents.

. . . .

[THE STATE]: My purpose in introducing them with him is because [Mr. Phillips] did research them and he is not happy with the assessment of these properties. He thinks the value should be higher. And I think he is allowed to say that.

[DEFENSE COUNSEL]: I don't believe he does, Your Honor. He doesn't have a right to give an opinion.

THE COURT: Not an expert opinion, [defense counsel].

[DEFENSE COUNSEL]: Not even a lay opinion of value.

THE COURT: If it's an opinion, not an expert opinion, that is reasonably related to his observations, under 701, and it is helpful (inaudible) doesn't have to be an expert opinion, give an opinion. If he's not testifying as an expert, he may give an opinion in the form of inference. If those opinions or inferences are rationally based on his perception and if it's helpful to understanding of testimony or a determination of a fact in issue. He is not an expert. But if he has an opinion based on what he claims that he saw on the property, things that were done to improve the property, interior or exterior, he can give that lay opinion, a lay opinion as to whether or not he believes the assessed value is in fact appropriate. You're going to have at least two experts that will say that the assessed value is not right, and he can give a lay opinion. The jury can give his lay opinion any weight or - - it's not a question of admissibility, it's whether or not he can give that opinion the weight -- whatever weight the jury wants to give this lay opinion. But if it's rationally based on his perception of the property, if he has an opinion as to whether or not the assessed value is or is not correct, he can give that lay opinion and the jury will give whatever weight they choose to do so. Because it appears as if what the assessor thinks is going to be taken to -- will be excepted to by you and also by Mr. Phillips, who takes exception to that assessment, whatever it might be. So I would note the exception to the record. But if he has an opinion as to what the property has been appraised at, and if he says, "I disagree with that,"

and this is why he disagrees with it, it is a lay opinion. But he's able to give that opinion if it's based on what he has seen and what he's observed.

[DEFENSE COUNSEL]: And I respectfully disagree with the Court. He's not even a resident of Shelby County. He does not have a right to give an opinion as to the value of real estate -- Honor.

THE COURT: Yes, sir.

[DEFENSE COUNSEL]: -- as a layperson, Your

THE COURT: He's not giving an opinion as to the value but as to just whether or not he agrees or disagrees with whatever that assessment is based on his perceptions and based on what he has said as to the condition of the property and things like that. So he's not giving an expert opinion. He's not saying, "This is what I think the appraisal is." But if he says, "Based on what I've seen, based on what I looked at, I think that might not be right," he can give that lay opinion, [defense counsel].

[DEFENSE COUNSEL]: And when I reference value, I was referring to fair market value.

THE COURT: . . . So if there's an appraised value and this witness says, "Based on what I've seen, based on what I've looked at, based on my view of the property at the time of the allegations as to when this property was taken between July 7, 2011, and February 22[], 2012," he can give a lay opinion that says, "I disagree with the appraisal." He cannot give an opinion as to what the appraisal should be, but he can give a lay opinion as to whether or not he'd disagree with it. I will note the exception for the record.

After the trial court admitted documents from the SCAP regarding the three properties, the court gave the following instruction to the jury:

Mr. Phillips is not being tendered to you as an expert. So Mr. Phillips cannot give you an opinion as to what the value of a particular property is because he's not being tendered as an expert. But under Tennessee law, he can give you a lay opinion. If he's not testifying as an expert and his testimony's in the form of an opinion, he can give you an opinion or an inference if those opinions or inferences are rationally based on his perception and if they are helpful for a clear understanding of this

- 11 -

witness' testimony or determination of a factual issue that you have to determine. Otherwise, Mr. Phillips is not going to be able to give you an opinion as to say, "This is what I think this -- the value of this property should be." But he can give you an opinion if he tells you that based on his perception of the property, what he saw, improvements that may have been made, he can give you an opinion as to whether or not he agrees or disagrees with whatever that value is. But he cannot give you an opinion as to what he thinks the assessed value should be.

We conclude that the trial court did not abuse its discretion by allowing Mr. and Mrs. Phillips to testify that they believed that the SCAP's appraised values of the properties were low. First, we conclude that the testimony was relevant because it has a tendency to make the determination of the value of the stolen property more probable. *See* Tenn. R. Evid. 401. Further, the probative value of the testimony was not substantially outweighed by the "the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Tenn. R. Evid. 403. The testimony at trial established that Mrs. Phillips was a partial owner of the 2481 West Ball Road property; thus, Mrs. Phillips properly gave her opinion on the value of that property as an owner. *See* Tenn. R. Evid. 701(b). Additionally, Mr. and Mrs. Phillips' testimony regarding the other properties was rationally based on their perception of the properties. *See* Tenn. R. Evid. 701(a)(1). Mr. and Mrs. Phillips described their observations of the neighborhoods that the properties were located in, the size of the residences and the lots, and the renovations made to the 2481 West Ball Road property and the 2503 West Ball Road property. We also conclude that Mr. and Mrs. Phillips' testimony regarding the value of the properties was helpful to the jury's determination of the value of the stolen property because the jury could compare their testimony with the testimony of the real estate experts, Mr. Branim and Mr. Sexton, to determine what testimony was most credible. *See* Tenn. R. Evid. 701(a)(2). Therefore, Defendant is not entitled to relief on this ground.

### *Cumulative error*

Lastly, Defendant argues that "the cumulative errors that occurred during the trial of this matter unjustly and severely prejudiced the outcome." The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation, but "have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, there must have been more than one actual error during the trial proceedings. *Id.* at 77. Here, we have not found any errors, and thus, Defendant is not entitled to cumulative error relief.

## III. Conclusion

After a thorough review of the facts and applicable case law, we affirm the trial court's judgment.

_____
ROBERT L. HOLLOWAY, JR., JUDGE